# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY SESSION, 1999

**FILED**

April 29, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9801-CC-00031** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **HUMPHREYS COUNTY** |
| **VS.** | ) | |
| | ) | **HON. ROBERT E. BURCH** |
| **DAVID J. FORRESTER,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Aggravated Sexual** |
| | ) | **Battery)** |

FOR THE APPELLANT:

TERRY J. LEONARD
9 North Court Square
P. O. Box 957
Camden, TN  38320

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KIM R. HELPER
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

DAN ALSOBROOKS
District Attorney General

GEORGE SEXTON
Assistant District Attorney
Room 206
Waverly, TN  37185

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# <u>OPINION</u>

In December of 1996, Appellant David J. Forrester was indicted by the Humphreys County Grand Jury for attempted rape of a child and for aggravated sexual battery. On July 25, 1997, Appellant filed a motion to suppress a pretrial statement that he gave to state investigators. The trial court denied the motion after a hearing on August 25, 1997. On August 28, 1997, Appellant was convicted of aggravated sexual battery. After a sentencing hearing on December 9, 1997, the trial court sentenced Appellant to a term of ten years in the Tennessee Department of Correction. Appellant challenges both his conviction and his sentence, raising the following issues:

> 1) whether the trial court erred when it admitted his pretrial statement into evidence;
> 2) whether the evidence was sufficient to support his conviction;
> 3) whether the trial court should have instructed the jury on lesser included offenses, including child abuse;
> 4) whether the trial court's response to a question from the jury about the severity of the charged offenses prejudiced Appellant; and
> 5) whether the trial court imposed an excessive sentence.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

Sharon Stump testified that on September 14, 1996, her car tire went flat in front of the home of Appellant and his wife, Julie Forrester. As Stump approached the back door of Appellant's home in order to use the telephone, she looked through some glass patio doors and saw Appellant rubbing his penis on the buttocks of Appellant's naked four-year-old daughter. Stump subsequently

reported the incident to the Tennessee Department of Human Services and to Julie Forrester.

On November 20, 1996, Appellant voluntarily took a polygraph test that had been arranged by his attorney. After the polygraph test had been administered, Appellant participated in a post-polygraph interview conducted by Agent Mike Smith of the Tennessee Bureau of Investigation, Investigator Ted Tarpley of the district attorney general's office, and Norma Williams of the Tennessee Department of Children's Services. During this interview, Appellant gave a signed statement in which he admitted that after he took his daughter out of the bathtub on September 14, 1996, she touched his penis and he had an erection. Appellant then admitted that when his naked daughter lay down on the floor, he took his penis out and rubbed it on her buttocks for approximately two to five minutes in order to obtain sexual gratification.

At trial, Appellant testified that his pretrial statement was untrue and that the only reason he gave the statement was because his interviewers told him that if he told them what they wanted to hear, he would get custody of his children back and he would receive counseling instead of having to appear in court.

## II. ADMISSION OF APPELLANT'S PRETRIAL STATEMENT

Appellant contends that the trial court erred when it admitted his pretrial statement into evidence. Specifically, Appellant contends that the statement was inadmissible because he was not properly Mirandized, the statement was given

involuntarily, and the statement was obtained in violation of Appellant's right to counsel.

## A. Miranda

Appellant contends that his pretrial statement was inadmissible because the police did not properly administer the Miranda warnings. Appellant concedes that he was given Miranda warnings before he took the polygraph test, however, he claims that the police should have given the Miranda warnings again before he participated in the post-polygraph interview.

In Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), the United States Supreme Court ruled that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination requires police officers, before initiating questioning, to advise the putative defendant of his right to remain silent and his right to counsel. Specifically, Miranda requires police to inform the person being questioned that (a) he has the right to remain silent; (b) any statement made may be used as evidence against him; (c) he has the right to the presence of an attorney; and (d) if he can not afford an attorney, one will be appointed for him prior to questioning, if he so desires. Id., 384 U.S. at 444, 86 S.Ct. at 1612.

However, police officers are only required to give Miranda warnings prior to "custodial interrogation" which has been defined as a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury v. California, 511 U.S. 318, 322–23, 114 S.Ct. 1526, 1528–29, 128

L.Ed.2d 293 (1994); State v. Bush, 942 S.W.2d 489, 499 (Tenn. 1997). The United States Supreme Court has held that it is appropriate to apply an objective test to determine whether a person is in custody and therefore entitled to receive Miranda warnings. Courts must consider the totality of the circumstances of the interrogation and inquire "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 422, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984); see also Stansbury, 511 U.S. at 323–24, 114 S.Ct. at 1529. In State v. Anderson, 937 S.W.2d 851, 855 (Tenn.1996), the Tennessee Supreme Court expressly adopted the objective analysis employed by the United States Supreme Court and adopted several nonexclusive factors to aid in the objective assessment of whether a reasonable person would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest. Relevant factors include (1) the time and location of the interrogation; (2) the duration and character of the questioning; (3) the officer's tone of voice and general demeanor; (4) the method of transportation to the place of questioning; (5) the number of police officers present; (6) limitations on movement or other forms of restraint imposed during the interrogation; (7) interactions between the officer and the person being questioned, including the words spoken by the officer and the verbal or nonverbal responses of the person being questioned; (8) the extent to which the person being questioned is confronted with the officer's suspicions of guilt or evidence of guilt; and finally (9) the extent to which the person being questioned is aware that he or she is free to refrain from answering questions or to end the interview at will. Id. The determination of whether an individual is in custody is fact specific, and the trial court should assess the applicability of the relevant factors in making its findings. Id. The trial court's decision will not be overturned by this

Court unless it appears there has been an abuse of the trial court's discretion and a violation of the appellant's rights. State v. Smith, 868 S.W.2d 561, 570 (Tenn. 1993).

Considering the totality of the circumstances, we conclude that the trial court did not abuse its discretion in determining that Appellant was not in custody when he gave his signed statement. There is no real dispute in this case that Appellant was the one who first suggested that he take a polygraph test and that he voluntarily took the test after it was arranged by his attorney. Further, the record indicates that it was Appellant's parents, and not the police, who transported Appellant to the assistant district attorney general's office where he took the polygraph test. Agent Smith testified at the suppression hearing that before he administered the polygraph test, he advised Appellant of his Miranda rights and told Appellant that he was free to leave at any time. Indeed, the record contains two forms signed by Appellant in which he acknowledged that he had been advised of his Miranda rights and had been advised that he was free to leave whenever he desired. Agent Smith also testified that Appellant never asked to leave at any time. The record also indicates that the polygraph test and the post-polygraph interview took place from approximately 1:00 p.m. to 4:30 p.m. and that during this time, Appellant took at least one break in which he went outside with his parents to smoke cigarettes. Agent Smith also testified that no one ever threatened Appellant during the polygraph and post-polygraph interview. Finally, once the interview had been concluded, Appellant was allowed to leave the courthouse with his parents.

In short, we conclude that the trial court did not abuse its discretion when it determined that Appellant was not "in custody" during the post-polygraph interview in which he gave his signed statement. Because Appellant was not in custody, the police were not required to readminister the Miranda warnings before conducting the post-polygraph interview. This issue has no merit.

**B.  Voluntariness of Appellant's Statement**

Appellant contends that his pretrial statement was inadmissible because it was given involuntarily. Specifically, Appellant claims that the statement was involuntary because he was suffering from a headache and back pain, he was threatened by the police, and he was promised that he would not go to jail if he cooperated.

Even though a statement was not given as a result of custodial interrogation, the statement must still be voluntary in order to be admissible. See Arizona v. Fulminante, 499 U.S. 279, 286–88, 111 S.Ct. 1246, 1252–53, 113 L.Ed.2d 302 (1991). In order to be considered voluntary, the statement must not be extracted by "any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." Bram v. United States, 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897); State v. Kelly, 603 S.W.2d 726, 727 (Tenn. 1980). However, "[a] defendant's subjective perception alone is not sufficient to justify a conclusion of involuntariness in the constitutional sense." State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996). Instead, "coercive police activity is a necessary predicate to finding that a confession is not voluntary." Id.

Whether or not a statement was voluntarily given is determined by examining the totality of the circumstances. Kelly, 603 S.W.2d at 728–29 (Tenn. 1980). "A trial court's determination that a confession was given knowingly and voluntarily is binding on the appellate courts unless the defendant can show that the evidence preponderates against the trial court's ruling." State v. Keen, 926 S.W.2d 727, 741 (Tenn. 1994). In addition, the findings of fact made by the trial court at a hearing on a motion to suppress will also be upheld unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Questions about witness credibility and "resolution of conflicts in the evidence are matters entrusted to the trial judge." Id.

First, Appellant claims that his statement was involuntary because it was a result of threats from Smith and Tarpley. Specifically, Appellant testified at the suppression hearing that Smith threatened that if Appellant did not confess, Appellant would receive the maximum jail sentence. Appellant also testified that Tarpley threatened that if Appellant did not confess, Tarpley would contact Channel 5 News. However, Smith testified that no one had threatened Appellant at any time. At the close of the hearing, the trial court stated that it found that Appellant had been untruthful in his testimony and that Appellant had never been threatened. The evidence does not preponderate against the trial court's finding.

Second, Appellant claims that his statement was involuntary because it was a result of police promises of leniency. Specifically, Appellant testified at the suppression hearing that he was promised that if he confessed, he would receive counseling and would not have to go to jail. However, Smith denied that Appellant was promised counseling and testified that instead, Appellant was

advised that Smith would recommend counseling if Appellant cooperated. Smith did admit that he told Appellant that if he did not cooperate, Smith would just turn the matter over to the district attorney and it might be possible that things would go harder on Appellant. The trial court believed Smith's version of the facts and found that although counseling was mentioned, it was not conditioned on cooperation. We conclude that the evidence does not preponderate against the trial court's findings of fact on this issue. In addition, we conclude that Smith's statements about counseling and the possibility of turning the matter over to the district attorney did not render Appellant's statement involuntary. Indeed, the Tennessee Supreme Court has stated that

> Promises of leniency by state officers do not render subsequent confessions involuntary per se: The Fifth Amendment does not condemn all promise-induced admissions and confessions; it condemns only those which are compelled by promises of leniency. The critical question is whether the behavior of the state's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined.

Smith, 933 S.W.2d at 455–56 (citations and internal quotations omitted). In fact, the supreme court found that statements to the defendant that he might not be prosecuted if he told the truth and that he definitely would be prosecuted if he refused to admit guilt were not enough to render the defendant's confession involuntary because the promises were equivocal and further, "[a]dvice to an individual concerning the consequences of a refusal to cooperate is not objectionable." Id. at 456. Similarly, we conclude that Smith's statements that there was a possibility that Appellant could receive counseling and that the matter would be turned over to the district attorney if Appellant did not cooperate were not "so coercive as to overbear [Appellant's] will." See id.

Third, Appellant claims that his statement was involuntary because he was suffering from stress and from a severe headache and back pain that was caused by Tarpley's instruction that Appellant was not to take any medication before the polygraph test. Although Tarpley admitted that he advised Appellant not to take any medication, there is no evidence that Tarpley did so in order to make Appellant more susceptible to police coercion. In any case, we conclude that while Appellant's physical and mental condition was certainly relevant to the determination of whether his statement was given voluntarily, the totality of the circumstances indicates that the statement was voluntary. Most importantly, it is undisputed that Appellant was advised of his Miranda rights before the polygraph test began and Appellant signed a form in which he acknowledged that he had been given these rights and that he was voluntarily waiving his rights. In addition, Appellant also signed a form in which he acknowledged that he had been advised that he was free to leave whenever he desired. Further, Appellant was allowed to roam about at will and talk to his parents during the break between the polygraph test and the post-polygraph interview. Under the totality of the circumstances, we conclude that the evidence does not preponderate against the trial court's finding that Appellant's statement was given voluntarily. This issue has no merit.

## C. Right to Counsel

Appellant contends that his pretrial statement was inadmissible because it was obtained in violation of his right to counsel.

Initially, Appellant claims that his Sixth Amendment right to counsel was violated because his attorney was not present when he was questioned by the state investigators. The law is clear that the Sixth Amendment right to counsel attaches to all critical stages of a prosecution and that "once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him." Brewer v. Williams, 430 U.S. 387, 401, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1977). In Tennessee, "[j]udicial proceedings are considered initiated, and thus Sixth Amendment rights attach, at the time an arrest warrant issues, a preliminary hearing is held (if no arrest warrant is issued), or an indictment or presentment is returned." State v. Jackson, 889 S.W.2d 219, 222 (Tenn. Crim. App. 1993). In this case, there is no indication in the record that any of these events had occurred before the polygraph test and post-polygraph interview on November 20, 1996. Because no judicial proceedings had been initiated against Appellant in this case at the time he gave his statement, his Sixth Amendment right to counsel had not attached and thus, was not violated. See id.[1]

Appellant also claims that his Fifth Amendment right to counsel under Miranda was violated because the State investigators continued to question him after he had invoked his right to counsel. Specifically, Appellant testified at the suppression hearing that he asked for his attorney as soon as the post-polygraph test began. However, Tarpley testified that Appellant never asked for an attorney until after he had already given the statement. Further, Williams also testified

---

[1]Appellant's argument implies that the State surreptitiously conducted the polygraph test and post-polygraph interview without notifying Appellant's counsel. However, as previously noted, the record indicates that Appellant's attorney helped make the arrangements for the polygraph test. Further, the trial court specifically found that Appellant's attorney knew when the polygraph test would take place and simply chose not to attend. We note that Appellant's counsel at the time he submitted to the polygraph test is not the same attorney who represented Appellant in the trial and appeal of this case.

that Appellant did not ask for an attorney until after he had already given the statement.  The trial court believed the State's witnesses and found that Appellant did not request an attorney until after he had given his statement and that as soon as Appellant did ask for an attorney, the interview was concluded. The evidence does not preponderate against this finding.  Therefore, we conclude that Appellant's Fifth Amendment right to counsel under Miranda was not violated.[2]  This issue has no merit.

## III. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to support his conviction.  When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).  Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id.  On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id.  Where the sufficiency of the evidence is contested on appeal, the relevant

---

[2]Although it is not clear, Appellant apparently contends that his right to counsel was also violated because while he was participating in the post-polygraph interview, both of his parents questioned Tarpley about whether their son needed an attorney.  However, it is clear that Appellant's parents could not invoke the right to counsel on behalf of their twenty-nine-year-old son. See Terry v. Lefevre, 862 F.2d 409, 412 (2d Cir. 1988) (holding that a mother could not invoke her twenty-seven-year-old son's right to counsel).

question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt."

In this case, Appellant was convicted of aggravated sexual battery. Under Tennessee law, a person commits aggravated sexual battery when the person has unlawful sexual contact with a victim who is less that thirteen years old. Tenn. Code Ann. § 39-13-504(a)(4) (1997). "Sexual contact" includes the intentional touching of the victim's buttocks if the touching can be reasonably construed as being for the purpose of sexual arousal or gratification. Tenn. Code Ann. § 39-13-501(2), (6) (1997). When viewed in the light most favorable to the State, the evidence in this case was clearly sufficient for a rational jury to conclude that Appellant had committed this offense. Stump testified that she saw Appellant rub his penis on the buttocks of the naked four-year-old female victim. In addition, the State introduced Appellant's signed statement in which he admitted that he had rubbed his penis on the buttocks of the naked victim in order to obtain sexual gratification.

Appellant essentially argues that Stump's testimony should be disregarded because she had a motive to lie and because her testimony contained statements that were either contradicted by other parts of her testimony or by the testimony of Appellant and other witnesses. Further, Appellant essentially argues that his signed statement should be disregarded because he testified at trial that the statement was given under stress and he only made the statement in order to obtain custody of his children. However, "[t]he credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact." State v. Cribbs, 967 S.W.2d 773, 793 (Tenn. 1998). It is obvious that the jury chose to believe Stump's testimony and chose to reject Appellant's testimony. In short, it is clear that when the evidence is viewed in the light most favorable to the State, a rational jury could find beyond a reasonable doubt that Appellant had committed the offense of aggravated sexual battery.[3] This issue has no merit.

## IV. FAILURE TO INSTRUCT ON LESSER OFFENSES

Appellant contends that the trial court erred when it failed to instruct the jury on the lesser included offenses, particularly the offense of child abuse.

Tennessee Code Annotated section 40-18-110(a) provides that a trial judge must charge the jury with all lesser grades or classes of an offense

---

[3]As part of his sufficiency of the evidence argument, Appellant alleges that the jury ignored the evidence and based its verdict on passion and prejudice. However, Appellant has failed to support this conclusory statement with citation to anything in the record. In fact, Appellant has failed to identify any reason in his brief for why the jury would have been prejudiced against him. During the hearing on Appellant's Motion for a New Trial, the trial court stated that there was no evidence that passion or prejudice had played any part in the jury's verdict. There is absolutely nothing in the record that preponderates against the trial court's finding.

supported by the evidence, without any request on the part of the defendant to do so. Tenn. Code Ann. § 40-18-110(a) (1997). See also State v. Trusty, 919 S.W.2d 305, 311 (Tenn. 1996). However, the Tennessee Supreme Court has held that error cannot be predicated on a trial court's failure to charge a lesser included offense when the evidence clearly demonstrates that the defendant is guilty of a greater offense. State v. Stephenson, 878 S.W.2d 530, 550 (Tenn. 1994). Further, this Court has specifically held that a trial court's failure to instruct the jury on the lesser included offense of child abuse was not error when the evidence clearly showed that the defendant had committed aggravated sexual battery. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996). In order to prove that Appellant had committed aggravated sexual battery, the State had to establish that Appellant intentionally touched the buttocks of the four-year-old victim for the purpose of sexual arousal or gratification. Tenn. Code Ann. §§ 39-13-501(2), (6), -504(a)(4) (1997). The evidence in this case, including Appellant's own statement, clearly established that Appellant committed this offense and nothing less. Thus, the trial court did not err when it failed to instruct the jury on any lesser included offenses. This issue has no merit.

## V. THE TRIAL COURT'S RESPONSE TO A QUESTION FROM THE JURY

Appellant contends that the trial court's response to a question from the jury resulted in undue prejudice. The record indicates that during deliberations, the jury returned with a question about whether attempted rape of a child was a more serious offense than aggravated sexual battery. In response, the trial court stated:

-15-

Don't concern yourselves with which case is the more severe. Do not concern yourselves with that. Concern yourselves with which of the charges fit the facts and then let the chips fall where they may. Is that sufficient explanation?

Appellant cites Veal v. State, 196 Tenn. 443, 268 S.W.2d 345 (1954), for the proposition that the trial judge should not, through action or word, indicate any conclusion as to the guilt or innocence of the accused. However, Appellant has failed to explain how this comment from the trial court could be construed as a comment on the strength of the State's evidence. Indeed, it is evident that the trial court was not commenting on the evidence. Rather, the trial court merely encouraged the jury to consider the facts and apply the facts to each of the charges to see whether the proof established guilt for either charge, regardless of which charge was the more serious. This issue has no merit.

## VI. LENGTH OF SENTENCE

Appellant contends that the trial court erroneously imposed a longer sentence than he deserves.

"When reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."

State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the appellant's statements, the nature and character of the offense, and the appellant's potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997 & Supp. 1998); Ashby, 823 S.W.2d at 169. "The defendant has the burden of demonstrating that the sentence is improper." Id. Because the record in this case indicates that the trial court properly considered the sentencing principles and all relevant facts and circumstances, our review is de novo with a presumption of correctness.

In this case, Appellant was convicted of aggravated sexual battery, a Class B felony. See Tenn. Code Ann. § 39-13-504(b) (1997). The sentence for a Range I offender convicted of a Class B felony is between eight and twelve years. Tenn. Code Ann. § 40-35-112(a)(2) (1997). When both enhancement and mitigating factors are applicable to a sentence, the court is directed to begin with the minimum sentence, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e) (1997).

In sentencing Appellant to a term of ten years, the trial court found that enhancement factor (1) applied because Appellant had a history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate sentencing range. See Tenn. Code Ann. § 40-35-114(1) (1997). The trial court concluded that this factor was entitled to little weight. The trial court also found that enhancement factor (15) applied because Appellant had abused

-17-

a position of private trust in a way that significantly facilitated the commission of the offense. See Tenn. Code Ann. § 40-35-114(15) (1997). The trial court concluded that this factor was entitled to significant weight. The trial court then considered several mitigating factors proposed by Appellant, but found that the only mitigating factor that applied was that Appellant had some mental problems. See Tenn. Code Ann. § 40-35-113(13) (1997). The trial court concluded that this mitigating factor was entitled to little weight.

Appellant does not challenge the trial court's application of the two enhancement factors, and we conclude that they were correctly applied. Indeed, the record indicates that enhancement factor (1) applied because Appellant has previous convictions for marijuana possession and for driving under the influence of an intoxicant. We also conclude that enhancement factor (15) applied because as the victim's father charged with her care and control, Appellant abused his position of private trust in a manner that significantly facilitated his commission of the offense. See State v. Hayes, 899 S.W.2d 175, 187 (Tenn. Crim. App. 1995). Appellant does not contend that the trial court should have applied any additional mitigating factors, and we conclude that no additional mitigating factors applied in this case.

Essentially, Appellant's sole argument in regard to his sentence is that the trial court failed to give adequate weight to the mitigating factor as balanced against the enhancement factors. Not only is this conclusory allegation completely insufficient to satisfy Appellant's burden of demonstrating that his sentence is improper, it is well-established that the weight to be given to each enhancement and mitigating factor is left to the trial court's discretion so long as

it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record.  State v. Zonge, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997); State v. Baxter, 938 S.W.2d 697, 705 (Tenn. Crim. App. 1996); Hayes, 899 S.W.2d at 185.  Therefore, we conclude that a ten year sentence is entirely appropriate in this case.  This issue has no merit.

Accordingly, the judgment of the trial court is AFFIRMED.


_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
DAVID H. WELLES, JUDGE


_____
THOMAS T. WOODALL, JUDGE